UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CHRISTINA L. DEARIEN and
THOMAS G. DEARIEN,
her husband

       Plaintiffs,

v.                      Civil Action No. 2:20-cv-00285

UNION CARBIDE CORPORATION,
a New York corporation;
THE DOW CHEMICAL COMPANY,
a Delaware corporation;
NEW RIVER TRUCKING, LLC,
a West Virginia limited liability company;
UNIVAR, INC. through its acquired
wholly-owned subsidiary Nexeo Solutions,
a Delaware corporation;
SPECTRUM CHEMICAL MANUFACTURING CORP.,
a California corporation; and
ALLNEX, USA, INC.,
a Delaware corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       Pending is the plaintiffs' motion to remand this action to Kanawha County Circuit Court, filed May 18, 2020 (ECF No. 9).

### I.   Background

       The plaintiffs, Christina and Thomas Dearien, commenced this action on or about May 1, 2019, by filing a

complaint in Kanawha County Circuit Court.  See ECF No. 1-1 at
11-29.  In their complaint, the plaintiffs allege that defendant
Union Carbide Corporation ("Union Carbide"), a New York
corporation with its principal place of business in Texas,
operates chemical production facilities in West Virginia that
manufacture surfactant products for defendant Dow Chemical
Company ("Dow"), a Delaware corporation with its principal place
of business in Michigan.  See id. ¶¶ 2-6.  The plaintiffs allege
that they are West Virginia citizens and that Christina was
employed by Union Carbide at Dow's West Virginia facilities from
2006 to 2018.  See id. ¶¶ 1-2, 7.

        In her capacity as an employee, Christina "unloaded"
certain chemicals, "manufactur[ed] . . . final surfactant
products by adding and mixing the chemical[s] . . . and then
sampling and inspecting the chemical mixture at different stages
of the chemical reaction process," "drummed final surfactant
products into 55-gallon containers," and was thereby "exposed
to" a number of "toxic chemical[s]."  Id. ¶¶ 8-10, 12.  The
plaintiffs allege that three other defendants — Univar, Inc.,
Spectrum Chemical Manufacturing Corp., and Allnex USA Inc.
(together referred to as the "Chemical Supplier Defendants") —
none of which are incorporated, or have their principal place of
business in, West Virginia — "supplied toxic chemical

2

components" to the facilities where Christina was employed.  Id.
¶¶ 12a-c.

The plaintiffs' complaint alleges that the final
defendant, New River Trucking, LLC ("New River"), is a West
Virginia limited liability company with its principal place of
business in West Virginia.[1]  See id. ¶ 13.  The plaintiffs allege
that New River "transport[ed] a portion of the various toxic
chemical components" to the facilities where Christina worked.
Id.; see also id. ¶¶ 54-55.  Specifically, New River "delivered
toxic chemicals for [Union] Carbide employees, including
[Christina], to off-load."  Id. ¶ 55.  The plaintiffs further
allege that New River "breached its duties of care" to "properly
maintain and monitor" and "thoroughly inspect and examine its
chemical cargo tanks and vessels . . . for leaks, faults, flaws,
and imperfections"; "identify actual leaks, faults, flaws, and
imperfections to its chemical cargo tanks and vessels"; "remedy

---

[1] All sides appear to believe that New River is a West Virginia
citizen because its place of formation and principal place of
business are in West Virginia.  For purposes of diversity
jurisdiction, however, the citizenship of a limited liability
company turns not on its place of formation or its principal
place of business but on the citizenship of all of its members.
See Cent. W. Va. Energy Co. v. Mountain State Carbon, L.L.C.,
636 F.3d 101, 103 (4th Cir. 2011); see also Johnson v. Columbia
Props. Anchorage, L.P., 437 F.3d 894, 899 (9th Cir. 2006)
(collecting rulings from the courts of appeals).  Nevertheless,
because no party disputes that New River is a West Virginia
citizen, the court proceeds with this understanding.

any issues in an adequate manner"; and "create and/or follow a safety plan for unloading chemical cargo tanks."  <u>Id.</u> ¶¶ 57-58. These breaches "resulted in toxic chemical[s] . . . escaping . . . into [Christina]'s work areas."  <u>Id.</u> ¶ 59.

As a result of the defendants' conduct, the plaintiffs allege that Christina was exposed to toxic chemicals.  <u>Id.</u> ¶¶ 14-15.  They allege that Christina's exposure to these chemicals is "a proximate cause of her development of colorectal carcinoma which was diagnosed in July 2017."  <u>Id.</u> ¶ 16.  Based on the allegations in the complaint, the plaintiffs assert eight counts against the defendants: a claim for violation of W. Va. Code § 23-4-2(d)(2)(ii) against Union Carbide (Count One); claims for premises liability (Count Two) and negligent undertaking (Count Three) against Dow; claims for negligence (Count Four), breach of warranty (Count Five), and strict liability (Count Six) against the Chemical Supplier Defendants; a claim for negligence against New River (Count Seven); and a claim for loss of consortium brought by her husband, Thomas, against all the defendants (Count Eight).  <u>Id.</u> ¶¶ 22-63.

The plaintiffs seek damages for Christina's medical expenses, pain and mental anguish, impairment of life enjoyment, impairment of ability to earn a living, and reduction of life expectancy and for Thomas's loss of consortium.  <u>See</u> <u>id.</u> ¶¶ 63-

68.  They further allege, presumably because New River had been named as a defendant, that "[t]here is not complete diversity of citizenship" to support federal court jurisdiction.  Id. ¶ 20.

On August 1, 2019, New River filed its answer and affirmative defenses to the plaintiffs' complaint.  See ECF No. 1-1 at 44-61.  Responding to the complaint's allegation that it transported or delivered toxic chemicals to the facilities where Christina worked, New River pled:

> It is denied that [New River] ever transported chemicals to Dow's West Virginia operation during the time [Christina] was employed at the various facilities, or ever.  By way of further Answer, . . . New River did not, at any time transport any of the chemicals referenced in [the] [p]laintiff[s'] [c]omplaint for Dow . . . , Union Carbide, or any other [d]efendant, nor did . . . New River have any transportation agreements with the named chemical companies, nor did New River . . . haul any pre-paid or collect liquid bulk chemicals at any time.

Id. ¶ 13; see also id. ¶ 14 ("New River did not, at any time[,] transport any of the chemicals referenced in [the] [p]laintiff[s'] [c]omplaint for Dow . . . , Union Carbide, or any other [d]efendant, nor did . . .  New River have any transportation agreements with any of the [d]efendants, nor did New River . . .  haul any pre-paid or collect liquid bulk chemicals at any time for any [d]efendants."); accord id. ¶¶ 54-60 (pleading a nearly identical statement in each paragraph). New River also asserted, as an affirmative defense, that "[t]o

the extent [it] ha[d] been joined solely to defeat diversity [jurisdiction], [New River] reserved the right to seek" attorney's fees and costs.  Id. at 59.

Thereafter, on or before September 23, 2019, all the remaining defendants filed their answers and affirmative defenses to the plaintiffs' complaint.  See ECF No. 1-1 at 67-116, 119-42, 147-59.  In their briefing on the current motion, the plaintiffs assert that Union Carbide and Dow received New River's answer no later than September 6, 2019, as evidenced by certificates of service showing that Union Carbide and Dow served their answers to the plaintiffs' complaint on New River on that date.  See ECF No. 10 at 4, 12 n.12; see also ECF No. 1-1 at 95, 116.  Union Carbide and Dow acknowledge the plaintiffs' assertion that they received New River's answer by September 6, 2019, and the plaintiffs' argument that the receipt by Union Carbide and Doe of New River's answer triggered a 30-day period in which to file their notice of removal.  See ECF No. 19 at 19 ("[The] [p]laintiffs argue that . . . [Union Carbide's and Dow's] [n]otice of [r]emoval should have been filed no later than 30 days after they received the [a]nswer of New River on September 6, 2019." (ellipsis omitted) (quoting ECF No. 10 at 12 n.12)).  Union Carbide and Dow do not dispute that they received New River's answer by September 6, 2019.  Removal within 30 days

of September 6, 2019, did not follow, and the case proceeded on the state circuit court's schedule.

On April 16, 2020, New River sent to the plaintiffs and the other defendants via email a letter, dated April 17, 2020, with an attached affidavit by its managing member, Jeffrey Branham, as well as supporting exhibits.  See id. at 316-24. The letter states that, "[a]s set forth in Mr. Branham's [a]ffidavit, New River . . . never delivered any product of any kind to the facilities where [Christina] worked," and, thus New River requested that the plaintiffs agree to dismiss New River from the action.  Id. at 317.  The letter also states that Mr. Branham's "[a]ffidavit supports the information provided to [the plaintiffs] in letter[s] [dated May 13 and 21, 2019,] sent by Mr. Branham," copies of which are attached to the affidavit as an exhibit.  Id.; see also id. at 321.

In his affidavit, ECF No. 1-1 at 319-20, Mr. Branham states that New River was in business "between 1999 and February 2012"; that, "at no time[,] did New River . . . transport, deliver, or store any chemical, chemical component, product[,] or other material from or to any Union Carbide or Dow . . . facility"; and that, "[a]t no time[,] did New River . . . ever do any business of any kind with Union Carbide or Dow" at the facilities where Christina worked.  Id. ¶¶ 3-5.  Mr. Branham

explains that New River "was a completely separate" entity from "New River Chemical, Inc.," which does business under a similar name, "New River Trucking." Id. ¶ 6. He further explained that "all" of New River's "assets, properties, contracts[,] and rights" were sold to third parties in February 2012" and that thereafter New River "ceased any and all shipping operations." Id. ¶¶ 7–8. Mr. Branham states that he provided the foregoing information to the plaintiffs' counsel "in 2019 by correspondence," which is attached to the affidavit. Id. ¶ 10.

In the letter, dated May 13, 2019, sent to the plaintiffs' counsel, Mr. Branham states that he "was the Owner/President & CEO of New River . . . from 1999 to 2[01]2 and was responsible for its transportation contracts"; that "New River[,] . . . at no time[,] had a transportation contract with Union Carbide[] [or] . . . Dow . . . or[,] at no time[,] transported, delivered, or stored [four surfactant products identified in the plaintiffs' complaint] for or to any Union Carbide or Dow . . . plants." ECF No. 1–1 at 321. The letter further explains that "all assets, properties, contracts[,] and rights of New River" were sold "to another tank truck carrier in February of 2012" and that "no business was conducted by New River . . . after the sale." Id.

In a subsequent letter dated May 21, 2019,[2] sent to the plaintiffs' counsel, Mr. Branham states that he is "turning this claim over to" New River's third-party purchaser, explaining that, although "the unit numbers [assigned by the U.S. Department of Transportation] were changed on the equipment in February of 2012," as the unit numbers assigned to New River had been cancelled, "the New River logos remained on the trailers for approximately 1 year" afterward.  ECF No. 1-1 at 322.  The letter continues that, "[a]s stated in [the] previous correspondence to [the plaintiff's counsel], . . . New River . . . has never transported Dow . . . [or] Union Carbide products[,] nor did New River . . . deliver any chemical products to Dow . . . or Union Carbide at any time."  Id.  Mr. Branham explains that "[p]roducts picked up or delivered to Dow . . . or Union Carbide was done by [New River's third-party purchaser], which had and still has a transportation contract with Dow."  Id.  He emphasizes that "[t]here has been absolutely no trucking activity with New River . . . after the sale in February 2012." Id.

---

[2] In a letter from the plaintiffs' counsel to Mr. Branham dated June 27, 2019, the plaintiffs' counsel asserts that Mr. Branham's second letter is dated incorrectly because, according to the plaintiffs' counsel, it references a letter sent by the plaintiffs' counsel to Mr. Branham on or about June 13, 2019. See ECF No. 1-1 at 324.

On April 23, 2020, Union Carbide and Dow removed the action to this court.  See ECF No. 1.  In their notice of removal, Union Carbide and Dow assert that the action is removable under 28 U.S.C. § 1441, because this court has jurisdiction over the action pursuant to 28 U.S.C. § 1332, as, in the absence of New River, which they assert was fraudulently joined, there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000.00.  See id. ¶¶ 6-13.

In support of their assertion that New River was fraudulently joined, Union Carbide and Dow rely heavily on the letter from New River to the plaintiffs and other defendants sent on April 16, 2020, as well as Mr. Branham's affidavit attached thereto.  See id. ¶¶ 16-17.  They emphasize Mr. Branham's statements that New River has never transported chemicals or other materials to or from any Union Carbide or Dow facility and has never done business of any kind with Union Carbide or Dow at the facilities where Christina worked.  See id.  They further note that Mr. Branham presented these same assertions in his letters to the plaintiffs' counsel dated May 13 and 21, 2019.  See id.

Union Carbide's and Dow's notice of removal also relies on the declaration of Rachel Roberts, a Union Carbide

employee.   See id. ¶ 19; see also ECF No. 1-1 at 326.   In her
declaration, ECF No. 1-1 at 326-28, Ms. Roberts states that,
since 2018, her duties have included "initiating, tracking, and
managing relationships with individuals and businesses that
provide goods and/or services to Union Carbide['s] . . .
facilities in West Virginia," id. ¶ 2.   She states that she
conducted "a good faith review of historical data maintained by"
her department and "a good faith review of shipping records of
products received by and shipped from the Union Carbide . . .
facilities in West Virginia."   Id. ¶¶ 5-6.   She further states
that the reviews "revealed that New River . . . was never a
Union Carbide . . . or Dow . . . vendor" or "a supplier of any
products or services for Union Carbide . . . or . . . Dow," and
they "revealed no records relating to New River" or "any
evidence that New River . . . ever provided any shipping or
transportation services — or any other services — to any Union
Carbide . . . facility in West Virginia."   Id.   "Based on [her]
personal knowledge and [these] review[s]," Ms. Roberts states
that New River "never sold, delivered, transported, or otherwise
supplied any chemical, chemical component, product or other
material to the Union Carbide facility" where Christina worked
and that it "did no business of any kind with Union Carbide or .
. . Dow . . . in West Virginia."   Id. ¶¶ 8-9.   Ms. Roberts does

not state when these reviews of Union Carbide's records were conducted.

Based on New River's letter sent to the other parties on April 16, 2020, Mr. Branham's affidavit, and Ms. Roberts' declaration, Union Carbide and Dow assert in their notice of removal that New River was fraudulently joined and that the court can disregard New River for purposes of determining whether complete diversity exists to exercise federal jurisdiction.  See ECF No. 1-1 ¶ 20.  Union Carbide and Dow also assert that removal was timely because they filed their notice of removal with one year of the action's commencement, see id. ¶¶ 28-30 (citing 28 U.S.C. § 1332), and within 30 days of their receipt of a "pleading, motion, order[,] or other paper," namely, the letter from New River sent April 16, 2020, and Mr. Branham's affidavit, which "establish[ed] that New River . . . had been wrongfully joined in this action," id. ¶¶ 29-30 (quoting 28 U.S.C. § 1446(b)(3)).  Union Carbide and Dow further assert that the action satisfies the amount-in-controversy threshold for purposes of exercising diversity jurisdiction, see id. ¶¶ 22-26, and that removal was appropriate because all other defendants aside from New River had consented to removal, see id. ¶ 27 (citing 28 U.S.C. § 1446(b)(2)); see also ECF No. 1-1 at 330-31, 333-34, 336-37.

12

On May 18, 2020, the plaintiffs filed their motion to remand the action to Kanawha County Circuit Court.  <u>See</u> ECF No. 9.  The motion has been fully briefed and is ready for disposition.

## II.  Legal Standard

Under the statute governing federal removal jurisdiction, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  A defendant seeking removal must file in the district court a notice of removal, signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).

Defendants seeking to remove an action must generally do so within 30 days of receiving the plaintiffs' initial pleading.  <u>See</u> 28 U.S.C. § 1446(b).  Where the existence of federal jurisdiction is unclear on the face of this initial pleading, however, the defendants may remove the action "within 30 days after receipt . . . , through service or otherwise, of a

copy of an amended pleading, motion, order[,] or other paper
from which it may first be ascertained that the case is one
which is or has become removable."  28 U.S.C. § 1446(b)(3).

      "The Fourth Circuit has made it clear . . . that [the]
removal statutes must be construed strictly against removal and
that the burden of establishing the propriety of removal rests
with the removing part[ies]."  <u>Cunningham v. Bombay Prods.,
Inc.</u>, 309 F. Supp. 2d 835, 836 (S.D.W. Va. 2004) (citing
<u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th
Cir. 1994)).  Specifically, the removing parties bear the burden
of establishing that removal was timely.  <u>See</u> <u>Tolley v. Monsanto
Co.</u>, 591 F. Supp. 2d 837, 845 (S.D.W. Va. 2008).

### III. Analysis

      The plaintiffs raise a number of interrelated
arguments that the removal of this action was improper.  The
court focuses on only one issue raised by the plaintiffs'
arguments: whether New River's answer, received by the removing
defendants no later than September 6, 2019, constitutes an
"other paper" from which the removing defendants could
reasonably ascertain removability, triggering § 1446(b)(3)'s 30-
day period in which to file a notice of removal.

As the plaintiffs observe, Union Carbide and Dow
expressly state in their notice of removal that they filed the
notice within 30 days of their receipt of New River's letter
sent April 16, 2020, and Mr. Branham's affidavit attached to the
letter, which constituted "other paper[s]," and therefore, they
say, within the 30-day period set by § 1446(b)(3).  See ECF No.
1 ¶¶ 29-30 (quoting 28 U.S.C. § 1446(b)(3)).  The plaintiffs
argue that, if, as Union Carbide and Dow state in their notice
of removal, the contents of New River's letter and Mr. Branham's
affidavit were sufficient to apprise the defendants of the
action's removability, then the contents of New River's answer,
which Union Carbide and Dow received more than seven months
earlier, should also have been sufficient to apprise them of the
action's removability.  See ECF No. 10 at 12 n.12; ECF No. 29 at
5-7.  In response, Union Carbide and Dow argue that the contents
of New River's letter and Mr. Branham's affidavit are "not
identical" to, and "contain significant additional information
beyond," the contents of New River's answer.  ECF No. 19 at 19 &
n.25.[3]

---

[3] Union Carbide and Dow also argue in passing that they "did not
remove solely on the basis of" New River's letter and Mr.
Branham's affidavit but also "upon the completion of [their] own
investigation," presumably the investigation described in Ms.
Roberts' declaration.  ECF No. 19 at 19.  The court is not
persuaded by this argument.  First, and chiefly, although the
notice of removal states that this investigation demonstrates

The court agrees with the plaintiffs.  Union Carbide and Dow fail to explain how differences between New River's answer on one hand and New River's subsequent letter and Mr. Branham's affidavit on the other hand demonstrate that removability was any less ascertainable from the answer than it was from the letter and affidavit.  See id.  The mere fact that differences between the documents' contents exist does not ipso facto demonstrate that those differences are in any way material to whether removability is more or less reasonably ascertainable from any of the documents.

Further, the court concludes that, for purposes of ascertaining removability, the answer's contents are not materially different than the contents of the subsequent letter

---

that New River was fraudulently joined, it does not state – like it expressly does with respect to Union Carbide's and Dow's receipt of New River's letter and Mr. Branham's affidavit – that the notice is timely because it was filed within 30 days of it. See ECF No. 1 ¶¶ 29-30.  Second, Union Carbide and Dow themselves argue that the investigation described in Ms. Roberts' declaration cannot trigger § 1446(b)(3)'s 30-day period, suggesting that the investigation can play no role in determining whether removal was ascertainable for purposes of timeliness under § 1446(b)(3).  See ECF No. 19 at 17-18.  Third, even assuming the investigation might otherwise play some role in determining timeliness of removal under § 1446(b)(3), Union Carbide and Dow have provided no indication, either in Ms. Roberts' declaration or elsewhere in the record, as to when the investigation was completed.  Accordingly, Union Carbide and Dow have failed to demonstrate that they relied on anything other than New River's letter and Mr. Branham's affidavit to ascertain removability for purposes of timely removing under § 1446(b)(3).

and affidavit.  The plaintiffs' complaint alleges that New River is liable because it transported toxic chemicals to the facility where Christina worked and did not take adequate measures to prevent Christina's exposure to those chemicals.  See ECF No. 1-1 at 13-29, ¶¶ 54-55, 57-59.  In their notice of removal, Union Carbide and Dow state that removal is predicated on the improper joinder of New River, as evidenced by New River's letter and Mr. Branham's affidavit, which state that New River did not transport chemicals to or from any Union Carbide or Dow facility and did not do any business with Union Carbide or Dow at the facilities where Christina worked.  See ECF No. 1 ¶¶ 17-20 (emphasizing these assertions from Mr. Branham's affidavit).

The notice of removal states that Mr. Branham's affidavit "make[s] clear that New River . . . never did any business with any Union Carbide (or [Dow]) facility in . . . West Virginia, much less transported . . . any chemical . . . or other material to any Union Carbide or [Dow] facility, to which . . . Christina[] was exposed." Id. ¶ 19 (emphasis in original).  New River's answer, however, provides the same assertions as those from New River's letter and Mr. Branham's affidavit relied upon by Union Carbide and Dow in their notice of removal.  See, e.g., ECF No. 1-1 at 44-61, ¶ 13 ("It is denied that [New River] ever transported chemicals to Dow's West

Virginia operation during the time [Christina] was employed at the various facilities, or ever."); id. ("New River did not, at any time transport any of the chemicals referenced in [the] [p]laintiff[s'] [c]omplaint for Dow . . . , Union Carbide, or any other [d]efendant, nor did . . . New River have any transportation agreements with the named chemical companies."); id. ¶ 14 ("New River did not, at any time[,] transport any of the chemicals referenced in [the] [p]laintiff[s'] [c]omplaint for Dow . . . , Union Carbide, or any other [d]efendant, nor did . . . New River have any transportation agreements with any of the [d]efendants.").  Thus, the court concludes that the basis for Union Carbide's and Dow's removal was as equally ascertainable from the contents of New River's answer as it was from the contents of New River's letter and Mr. Branham's affidavit.

    For purposes of § 1446(b)(3), then, assuming the removability of this action was ascertainable for the reasons offered by Union Carbide and Dow in their notice of removal, removability would have been reasonably ascertainable from New River's answer, received by Union Carbide and Dow no later than September 6, 2019, which triggered § 1446(b)(3)'s 30-day period in which to file a notice of removal.  Because Union Carbide and Dow filed their notice of removal long after this 30-day period

had expired, they have failed to meet their burden to establish that their removal is timely.

The additional arguments that are or might have been raised by Union Carbide and Dow are unavailing.  First, the parties' briefing indicates some dispute as to whether the "other paper" triggering § 1446(b)(3)'s 30-day period must be created by and received from a plaintiff.  In their initial memorandum, the plaintiffs argue that neither New River's letter nor Mr. Branham's affidavit can constitute "other paper" that can trigger § 1446(b)(3)'s 30-day period, as only a document created by a plaintiff, not a defendant, can qualify as an "other paper" under § 1446(b)(3).  <u>See</u> ECF No. 10 at 10 n.9.[4] In response, Union Carbide and Dow argue that the Fourth Circuit does not require that the "other paper" be created by or received from a plaintiff rather than a defendant, and they cite

---

[4] The plaintiffs' argument in this vein appears to be premised on the notion that a defendant will only be able to successfully remove an action from state court if one of the two 30-day periods set forth in § 1446(b) is triggered and that, if neither 30-day period is triggered — say, because a plaintiff did not provide the "other paper" the defendant relies on for removal under § 1446(b)(3) — then removal will be improper.  <u>See</u> ECF No. 10 at 10 n.9.  Union Carbide and Dow, on the other hand, argue that removal may be proper in circumstances in which neither 30-day period is triggered, so long as the removal does not run afoul of the one-year period set forth in § 1446(c).  <u>See</u> ECF No. 19 at 17-20; <u>see also</u> <u>Atkins v. AT&T Mobility Servs., LLC</u>, No. 2:18-cv-00599, 2019 WL 5190971, at *5-7 (S.D.W. Va. Oct. 15, 2019).

authority observing that the plain language of § 1446(b)(3) does not require "other paper" to be from a plaintiff.  See ECF No. 19 at 16-17 & n.20.  In reply, the plaintiffs seem to concede that "other paper" may include documents from defendants in some circumstances, and they argue specifically that one co-defendant's answer may constitute an "other paper" triggering § 1446(b)(3)'s 30-day period for other removing co-defendants.

It appears there may no longer be a dispute between the parties that "other papers" can include a document, specifically an answer, that a removing defendant receives from a co-defendant.  See WMS, LLC v. Allied Prop. & Cas. Ins. Co., 244 F. Supp. 3d 567, 571-72 (W.D. Tex. 2017) (concluding that a co-defendant's answer constituted "other paper" for purposes of § 1446(b)(3)).  Thus, to the extent Union Carbide and Dow might have argued that New River's answer cannot constitute an "other paper" for purposes of § 1446(b)(3), they have failed to meet their burden in this regard.

Further, it is doubtful that the "other paper" referred to in § 1446(b)(3) must come from a plaintiff, as the plaintiffs here initially argued.  Section 1446(b)(3) states that "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from

which" removability "may first be ascertained."  By its terms,
it contains no requirement that any of these documents be
created by or received from a plaintiff.  See WMS, LLC, 244 F.
Supp. 3d at 572 ("The statute itself does not require" "a
removing defendant [to] first receive the 'other paper'
specifically from the plaintiff.").  Additionally, the text of §
1446(b)(3) strongly indicates that "other paper" may come from
sources other than the plaintiff.  Neither an "amended pleading"
nor a "motion" is necessarily created by or received from a
plaintiff, and an "order" is not created by and usually not
received from a plaintiff.  See Lowery v. Ala. Power Co., 483
F.3d 1184, 1214 n.63 (11th Cir. 2007) (noting that § 1446(b)(3)
includes "order[s]," which are "from the court," among the
documents that may trigger the 30-day period).

       As the preceding list of specific documents need not
come from a plaintiff, it is unlikely that documents falling
under the catch-all term "other paper" would need to come from a
plaintiff either.  See United States v. Phillips, 543 F.3d 1197,
1206 (10th Cir. 2008) ("Under the venerable interpretive canons
of noscitur a sociis and ejusdem generis, the meaning of a
catchall phrase is given precise content by the specific terms
that precede it.").  Another subsection of § 1446 confirms this
view by providing that, in certain circumstances, when

21

determining the amount in controversy for purposes of removal, "other paper" broadly includes "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery," which are not necessarily from the plaintiff.  28 U.S.C. § 1446(c)(3)(A).

The court is not persuaded that the cases cited by the plaintiffs in their initial brief demand a contrary conclusion. Only one of them, Romulus v. CVS Pharmacy, Inc., 770 F.3d 67 (1st Cir. 2014), straightforwardly "hold[s] that the defendant looks to the papers provided by the plaintiffs to determine whether Section 1446(b)'s removal clocks have been triggered." 770 F.3d at 74; see id. ("Section 1446(b)(3) does not apply until removability can first be ascertained from the plaintiffs' own papers." (emphasis in original)).  However, the court notes that, in Romulus, the First Circuit did not confront a document, let alone one created by a co-defendant, purporting to trigger § 1446(b)(3)'s 30-day period, but rather an argument that the 30-day period was triggered because the defendant, by its own reasonable investigation, could have earlier ascertained the basis for removal that was later evident from an email sent by the plaintiff.  See id. at 70-73.

Decisions from both the Second Circuit and the Eleventh Circuit contain language that, when read in isolation,

suggest that "other paper" must come from the plaintiff, <u>see</u>

<u>Cutrone v. Mortg. Elec. Registration Sys., Inc.</u>, 749 F.2d 137,

139 (2d Cir. 2014) ("[T]he 30-day removal period[] . . .  [is]

not triggered until the plaintiff serves the defendant with an .

. . other paper that explicitly specifies the amount of monetary

damages sought or sets forth facts from which [the requisite]

amount in controversy . . . can be ascertained."); <u>Lowery</u>, 483

F.3d at 1214 n.63 ("[T]here must be . . . an amended pleading,

motion, order or other paper, . . . which the defendant must

have received from the plaintiff []or from the court, if the

document is an order[.]" (internal quotation marks omitted)).  A

closer reading reveals that neither decision actually addresses

that issue.

Likewise, this court's decision in <u>Atkins</u>, 2019 WL

5190971, while it quotes language from other courts suggesting

that "other paper" must come from a plaintiff, simply does not

address that issue.  Lastly, although the Fifth Circuit has held

that "the 'other paper' conversion [of an action from non-

removable to removable] requires a <u>voluntary act by the</u>

<u>plaintiff</u>," <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489,

494 (5th Cir. 1996) (emphasis in original) (citing <u>Gaitor v.</u>

<u>Peninsular & Occidental S.S. Co.</u>, 287 F.2d 252, 254 (5th Cir.

1961)), courts in the Fifth Circuit have been somewhat equivocal

on whether this voluntary-act requirement means that the "other paper" triggering § 1446(b)(3)'s 30-day period must come from a plaintiff and cannot come from a defendant, compare Zea v. Avis Rent a Car Sys., Inc., 435 F. Supp. 2d 603, 606 (S.D. Tex. 2006) ("[A] defendant cannot use the 'other paper' conversion by creating the paper which establishes federal jurisdiction."), with Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815 (5th Cir. 1993) (co-defendant's answer constitutes "other paper"); WMS, LLC, 244 F. Supp. 3d at 571-72 (same); Fernando Garcia v. MVT Servs., Inc., 589 F. Supp. 2d 797, 803-804 (settlement agreement between plaintiff and co-defendant constitutes "other paper").[5]

Whatever the persuasive value of the out-of-circuit decisions discussed above might be, it appears that the Fourth Circuit has not addressed the issue. Instead, the Fourth Circuit has "interpreted the 'motion, order or other paper' requirement broadly to include 'any information received by the defendant, whether communicated in a formal or informal manner.'" Northrop Grumman Tech. Servs., Inc v. DynCorp Int'l LLC, 865 F.3d 181,186-87 (4th Cir. 2017) (quoting Yarnevic v.

---

[5] The court further notes that the Fifth Circuit's voluntary-act requirement appears to be based ultimately on a Supreme Court decision that predates the 1949 enactment of the provision now codified at § 1446(b)(3), see Gaitor, 287 F.2d at 254 (citing Great N. Ry. Co. v. Alexander, 246 U.S. 276, 281 (1918)); see also Act of May 24, 1949, Pub. L. No. 81-72, ch. 139, § 102, 63 Stat. 89, 101.

Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996)).  Nothing from the Fourth Circuit's decisions indicates that "other paper" must come from a plaintiff and cannot come from a co-defendant.  The court cannot conclude, based on this brief canvassing of cases, that the "other paper" triggering § 1446(b)(3)'s 30-day period must come from a plaintiff and cannot come from a co-defendant.

Union Carbide and Dow also argue that § 1446 contemplates that, in some circumstances, neither of the 30-day periods in § 1446(b) will be triggered and that, in such circumstances, a defendant may remove an action any time (subject to the one-year limitation in § 1446(c)) on the basis of its own information it has obtained through investigation.  See ECF No. 19 at 17-20; see also Atkins, 2019 WL 5190971, at *5-7.  This may be an accurate understanding of § 1446, but it is not applicable here.  As both sides note, see ECF No. 19 at 16 n.18; ECF No. 29 at 7, the ability of a removing defendant to file a notice of removal at any time, as Union Carbide and Dow suggest, is subject to the "provi[sion] that [the removing defendant] has not run afoul of either of the thirty-day deadlines," Atkins, 2019 WL 5190971, at *7 (quoting Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013)).  Here, Union Carbide's and Dow's own notice of removal asserts the 30-day period in § 1446(b)(3) was triggered upon receipt of

New River's letter and Mr. Branham's affidavit, the material contents of which, the court has determined, were provided in New River's answer, which was received by Union Carbide and Dow no later than September 6, 2019.  See Lowery, 483 F.3d at 1213-15 (in assessing the propriety of removal, courts may rely on assertions made in the notice of removal).

In sum, the removing defendants have not met their burden to demonstrate that removal was proper in light of § 1446(b)(3)'s 30-day period to file a notice of removal after receiving an "other paper" from which removability "may first be ascertained."

## IV.  Conclusion

For the foregoing reasons, it is ORDERED that the plaintiffs' motion to remand (ECF No. 9) be, and hereby it is, granted.[6]  It is accordingly ORDERED that this action be, and hereby it is, remanded for all further proceedings to Kanawha County Circuit Court.

---

[6] In their initial memorandum, though not in their motion, the plaintiffs state in passing that fees and costs should be awarded to them.  See ECF No. 10 at 2 & n.1.  However, the plaintiffs request no such award in their motion and present no argument for it in their briefing.  No award is merited.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties and a certified copy to the clerk of court for Kanawha County Circuit Court.

ENTER: March 30, 2021

John T. Copenhaver, Jr.
Senior United States District Judge